O’NIELL, J.
The defendant was convicted of the offense of willfully and knowingly taking and carrying away, without the consent of the owner, oysters, shells, and cultch bedded or planted by a lessee, under the provisions of the statute regulating the oyster industry of this state. The offense being a misdemeanor, he was tried by the district judge without a jury. On conviction he was sentenced to pay a fine of $301, and has appealed from the verdict and sentence.
The bill of information charged that the defendant did unlawfully, willfully, and knowingly take and carry away, without the consent or permission of the owner, certain oysters, cultch, and shells bedded and planted by the A. St. Martin Company, Limited, on certain oyster bedding grounds or water bottoms leased to the said A. St. Martin -Company, Limited, by the oyster commission, now called the department of conservation, of Louisiana. It was alleged in the bill of information that the leased bedding grounds from which the oysters and shells and cultch were taken by the defendant had been surveyed and marked as required by the statute authorizing the lease of the-oyster bottoms.
The offense of which the defendant was accused and convicted is denounced by section 18 of Act No. 54 of 1914, in these words:
“That it shall be unlawful for any person to knowingly or willfully take oysters, shells or cultch, bedded or planted by a lessee under this Act.”
Section 24 of the statute declares that the penalty for a violation of any of the provisions of the act shall be a fine not less than $100 nor more than $5,000, or imprisonment in the parish jail for a term not less than 90 days nor more than 2 years, or both fine and imprisonment, at the discretion of the court.
The lease of the oyster bed from which the defendant was accused of taking the oysters, shells, and cultch was made by the oyster commission to Ovide Guidry on the 12th of October, 1905, under the provisions of Act No. 52 of 1904, entitled “An Act to encourage, protect, regulate and develop the oyster industry,” etc. The lease, together with the oysters, shells, etc., placed thereon by Ovide Guidry, and subject to his obligations as lessee, was transferred by him to the A. St. Martin Company, Limited, on the 20th of July, 1909, and the transfer was approved by the oyster commission of Louisiana.
The Act No.- 52 of 1904, as amended from time to time, was repealed and superseded by the Act No. 54 of 1914, on the same subject. But the latter statute expressly declared that all leases of oyster bedding grounds made in pursuance of the Act No. 52 of 1904 (and other statutes on the same subject) should continue in force and effect until their expiration, provided the lessees should pay the rental and comply with the regulations imposed by the conservation commission.
The facts proven on the trial and found by the district judge are set forth in tho statements per curiam, and are conceded to be substantially as follows:
The defendant did on the 24th of October, 1909, the date stated in the bill of information, willfully and deliberately take oys *427 ters from the bedding ground or oyster bottom which he knew was embraced within the area held and cultivated by the A. St. Martin Company, Limited, under the lease made by the oy'ster commission to Ovide Guidry and by him transferred to A. St. Martin Company-The bedding ground was surveyed by the engineer or surveyor of the oyster commission on the 12th of October, 1905, and staked or marked out and delivered to Ovide Guidry when the lease was made. Hence it is conceded that the oyster commission, under the authority conferred upon it by the Act No. 52 of 1904, found and ruled that the water bottoms covered by the lease were not natural oyster reefs, as defined in that statute. Ovide Guidrjf remained in possession of the leased bedding grounds and planted and cultivated oysters thereon continuously until the year 1909, when he transferred the lease to A. St. Martin Company, Limited; and the latter has been in possession, cultivating the bedding grounds continuously, since the lease was transferred. At the proper season in each of the seven years immediately preceding the trial of this case, the lessee scattered oyster shells and seed oysters over the leased oyster beds, and fished oysters therefrom every year with oyster tongs. It was proven and conceded to be impossible by that method to gather all of the oysters from a reef in a fishing season. It is admitted that enough oysters were always left on the reefs by the lessee to reproduce the quantity gathered. In fact, there is a limit to the number of layers of oysters that will grow annually if the top layers are not removed to prevent those underneath from smothering and dying. Hence the annual thinning out of the oysters in the bed and scattering or spreading the culls, shells, and cultch is the method of cultivation. The evidence showed, however, to the satisfaction of the district judge, that the leased oyster bottoms were originally natural oyster reefs, where oysters had grown naturally and without cultivation from time immemorial, 'and where they would have continued to grow without cultivation up to the date of the trial. The evidence did not show what quantity of oysters would have grown on the reefs if they had not been cultivated.
In section 10 of the Act No. 52 of 1904 the oyster commission was forbidden to lease any natural oyster reef; and in section 25 of the statute a natural reef (within the territory in which the lease in question is located) was defined as any area equaling not less than 10,000 square feet of the bottom of any body of water where oysters are found growing naturally at the time and in sufficient quantities to make their fishing profitable by means of hand tongs, provided no break of continuity in any reef of less than 25 feet should be considered. It was provided further in that section of the statute that the oyster commission should be the judge as to whether any, particular bottom was or was not a natural reef, and that, when any particular locality should be declared open for lease for oyster bedding or propagation, by a resolution of the oyster commission', the correctness of the ruling should be subject to review by the judge oí the district court, as provided in section 19 of the statute. That section (19) provided merely that it should be unlawful to take or catch oysters on a natural reef, or to have such oysters in one’s possession for sale, between the 1st day of May and the 1st day of September, of each year, except from private leased grounds, and that the possession of oysters during the closed season should be prima facie evidence of the violation of the act, and the onus should be upon the accused to establish that the oysters were from private leased grounds. Prom those provisions of the statute making it unlawful to catch oysters on the natural oyster reefs, or *429 to have such oysters in one’s possession for sale, during the closed season, except from private leased grounds, it is plain that the Legislature 'contemplated that the oyster commission might make an error in ruling that any particular bottom was not a natural oyster reef. That may be the reason for the provision in section 25 that when the commission should declare by resolution any particular locality open for lease for oyster bedding or propagation, the correctness of the commission’s ruling should be subject to review by the judge of the district court in a criminal prosecution for taking oysters from a natural reef, or having such oysters in one’s possession for sale, during the closed season, except from private leased grounds. It is more probable, however, that the “section 19” mentioned in section 25 is a misprint, the intention having been to say “17.” But that question is not important here, in view of the plain recognition ,in the statute that leased bedding grounds might be found to contain a natural oyster reef, notwithstanding the oyster commission had ruled that it did not contain one. We refer to the fact that, although section 10 declared that a natural oyster reef should not be leased, section 19 declared that it was not unlawful to fish oysters from a natural reef within private leased grounds, or to have such oysters in one’s possession, during the closed season.
In section 17 of the statute a limitation of four months was fixed as the time within which a lease might be contested before the commission on the ground that it embraced a natural oyster reef; but that provision appears to have no reference to the provision in section 25 declaring that the correctness of the ruling of the commission declaring a particular locality open for lease should be subject to review by the judge of the district court, in a prosecution for fishing oysters from a natural reef, or having such oysters in one’s possession for sale, during the closed season, excépt from private leased ground.
By the Act No. 189 of 1910 the Legislature put the oyster industry under the control and supervision of the board of commissioners for the protection of birds, game, and fish; that board having been created by the Act No. 278 of 190S. And, by the Act No. 54 of 1914 the control and supervision of the oyster industry was transferred to the conservation commission of Louisiana.
In section 3 of the Act No. 54 of 1914 the conservation commission was given authority to lease natural oyster reefs. And the second paragraph of section 5 of the statute provides that a lessee shall enjoy' the exclusive use of the leased water bottoms, and that all oysters, shells, and culteh grown or placed thereon shall be the exclusive property of the lessee so long as the rental is paid.
When the evidence had been introduced on the trial of this case, the defendant’s counsel requested the district judge to charge or maintain certain legal propositions; and from his refusal 15 bills of exception were reserved. Four of them refer to the alleged failure of the conservation commission to publish its ordinances and resolutions, and of the failure of the district attorney to introduce the ordinances and resolutions of the commission on the trial of this case. These bills of exception do not refer to any particular ordinance or resolution of the commission. The learned counsel for the defendant have not advanced any argument in support of the propositions advanced, and we find no merit whatever in the bills of exception.
Of the remaining eleven bills of exception, six attack the constitutionality of the Act No. 54 of 1914, and five maintain that, on the facts disclosed by the evidence, the defendant cannot be held to have violated the section of *431 the statute under which he was prosecuted, or to have committed the offense charged in the bill of information.
We will first dispose of the six bills of exception attacking the constitutionality of the law.
[9] The first complaint in that respect is that by the Act No. 54 of 1914 the Legislature has attempted to create a fourth department of the government of this state, namely, the department of conservation, in violation of the provision of article 16 of the Constitution that the powers of the government of the State shall be divided into three distinct departments, the legislative, the executive, and the judicial. In a supplemental brief filed in this court the learned counsel for the defendant concede that the conservation commission is not a separate department of the government, but is merely a subordinate commission or state agency. The word “department,” used in the statute, was not intended to distinguish the conservation commission as a separate and distinct department of government, in the sense of article 16 of the Constitution. There is no merit whatever in that attack upon the constitutionality of the law.
The second contention, with regard to the constitutionality of the Act No. 54 of 1914, is that the object, to make it a criminal offense to violate any of the provisions of the act, is not expressed in its title, as required by article 31 of the Constitution. The learned counsel are mistaken in that contention. One of the means of carrying out the general purpose or object of regulating the oyster industry is expressed in the title of the act to be “by providing penalties and forfeitures for the violations of this act.”
[10] The third attack on the constitutionality of the law is that it attempts to give to individuals or corporations having factories, shucking plants, and shipping depots certain special privileges. The provision of the statute referred to has no reference whatever to the section which the defendant was convicted of violating, and the objection urged is entirely irrelevant. See State v. Doremus, 137 La. 269, 68 South. 605, and State v. Emile, 140 La. 829, 74 South. 163.
[1] The fourth attack upon the constitutionality of the statute is that, in so far as it authorizes the leasing of oyster bedding grounds, it violates article 58 of the Constitution, prohibiting the loaning, pledging, or granting of the funds, credit, property, or things of value of the state to or for any person or persons, association, or corporation, public or private. It was decided in the case of State v. Authement, 139 La. 1070, 72 South. 739, that the Act No. 1S9 of 1910, authorizing the lease of oyster bedding grounds, was an administrative measure, designed to conserve the resources of the state, and was not within the prohibition contained in article 58 of the Constitution.
[2] The fifth ground on which the constitutionality of the statute is questioned is that it attempts to delegate legislative authority to the conservation commission, in violation of articles 16 and 17 of the Constitution. This objection refers to the authority conferred upon the commission to ascertain and determine, as a matter of fact, whether any particular area does or does not contain a natural oyster reef, as defined in the statute. To ascertain and determine such facts is not a legislative function. The authority of the Legislature to delegate to the administrative boards and agencies of the state the power and authority of ascertaining and determining the facts upon which the laws are to be applied and enforced cannot be seriously disputed. See Black’s Const. Law, p. 96.
[3] The sixth and last ground of attack on the constitutionality of the statute is that it embraces more than one object, in violation of article 31 of the Constitution. All of the provisions of the Act No. 54 of 1914 are germane to the one object and purpose of the *433 act, i, e., to regulate the oyster industry of this state. The constitutional requirement that a statute shall embrace only one object does not mean that each and every means necessary to accomplish the object of the law must be provided for by a separate act relating to it alone. A statute that deals with several branches of one subject does not thereby violate the constitutional requirement that the act must have only one object. See State v. Doremus, 137 La. 266, 68 South. 605, and City of Shreveport v. Nejin, 140 La. 785, 73 South. 996.
Our conclusion is that the attacks made upon the constitutionality of the Act No. 54 of 1914 by the defendant are all without merit.
The five bills of exception in which the defendant (pretermitting the question of constitutionality of the statute) contends that the facts disclosed by the evidence and admitted in the statements per curiam entitled him to an acquittal may be considered together. They were reserved to the judge’s refusal to charge or maintain certain legal propositions, substantially as follows: (1) That, inasmuch as the evidence showed that the place from which 'the oysters were taken by the defendant was, and had been from time immemorial, a natural reef, and inasmuch as the evidence therefore failed to prove conclusively that the oysters alleged to have been taken by the defendant were oysters that had been planted or bedded by the A. St. Martin Company, Limited, the defendant was entitled to a verdict of acquittal. (2)That, the proof being that there were oysters growing naturally on the reef from which the defendant is charged with taking oysters, the fact that the A. St. Martin Company, Limited, had planted or bedded oysters upon the natural reef did not furnish proof that the oysters taken by the defendant from that reef were the oysters planted or bedded by the A. St. Martin Company, Limited. (3) That the defendant was entitled to the benefit of the doubt as to whether any of the oysters taken by him from the natural reef were the same that had been bedded or planted by the A. St. Martin Company, Limited. (4) That the defendant had a right to fish oysters growing naturally on a natural oyster reef, even though the natural reef was embraced within the area leased to the A. St. Martin Company, Limited; that the statute does not make it unlawful to take oysters, shells, or cultch from a natural reef within leased bedding grounds, unless the oysters, shells, or cultch taken were actually bedded or planted by the lessee, and that, even though the lease be valid in so far as it embraces a natural reef, the defendant cannot be legally convicted of taking oysters, shells, or cultch bedded or planted by the lessee, without proof beyond a reasonable doubt that the identical oysters, shells, or cultch taken by him had been bedded or planted by the lessee. (5) That, in arbitrarily defining a natural oyster reef, for the purposes of the Act No. 52 of 1904, the Legislature had no power to destroy or alter the fact, and did not destroy or alter the fact, that oysters that have grown naturally and without cultivation on a natural oyster reef are not oysters bedded or planted by a lessee.
The district judge, in his reasons for judgment, or statements per curiam in the bills of exception, declared that his “irresistible conclusion” from the evidence (which we have recited above) was “that it would be next to impossible” for the defendant to have taken the oysters which he was proven to have taken from the natural reef without taking some of the oysters that had been bedded or planted by the A. St. Martin Company, Limited. But, said his honor, the trial judge, the bill of information charges that the accused did willfully and knowingly take oysters, cultch, and shells bedded and planted by the A. St. Martin Company, Limited; *435 hence, if the defendant had a right to go upon the water covering the leased oyster grounds and fish for oysters growing naturally on a natural oyster reef, he could not be legally convicted of willfully and knowingly taking oysters, cultch, or shells that had .'been bedded or planted by the A. St Martin Company, Limited, without proof positive •that the oysters, cultch, or shells taken by the defendant included some that had been bedded or planted by the A. St. Martin Company, Limited. His honor the trial judge recognized that it was utterly impossible to identify any of the oysters, shells, or cultch bedded or planted by the A. St. Martin Company, Limited, among the oysters, shells, and cultch taken by the defendant from the leas■ed bedding grounds, except by/ circumstantial evidence, such as the facts proven on the trial of this case and set forth in the foregoing opinion. Notwithstanding his “irre■sistible conclusion that it would, be next to impossible” for the defendant .to have taken .same of the oysters, shells, and cultch bedded ■or planted by the A. St. Martin Company in taking the oysters that grew naturally on the natural oyster reef, the district judge concluded that the prosecution had not positively identified any of the oysters taken by the ■defendant as oysters that had been bedded ■or planted by the A. St. Martin Company, Limited. Hence he held that a verdict of “not guilty” would have to be rendered, except for and upon the theory advanced by -.the attorneys for the prosecution, and adopted by the district judge, that the ruling of the oyster commission declaring the oyster bedding grounds subject to lease was tantamount to a ruling that there was no natural ■oyster reef within the area leased; that the ruling of the commission was not subject to review by the courts after the lapse of four months, the time fixed in section 17 of Act .52 of 1904; and that the finding of the commission, regardless of the facts shown on the trial of this case, supplied the proof that the oysters, shells, and cultch taken by the defendant from the leased oyster bedding grounds were oysters, shells, and cultch bedded or planted by the lessee.
[4] The prescription of four months referred to is the time within which, under section 17 of Act 52 of 1904, an application or petition for the cancellation of a lease, on the ground that the area embraces a natural oyster reef, may be filed with the oyster commission. That section of the statute provides that no such petition shall be received and acted upon by the commission unless it is presented within four months after the date of the lease, after which time the lessee shall be secure against attack on that account. But the same section declares that in every case the decision of the commission on a petition to cancel a lease on the ground that the area embraces a natural oyster reef shall be subject to review by a judge of the district court, and that his decision shall, in turn, be subject to appeal. Those provisions of the law refer only to the proceeding for the cancellation of a lease on the ground that the area leased contains a natural oyster reef. They -have no reference whatever to a prosecution for taking oysters, shells, or cultch bedded or planted by a lessee.
[5] To convict the defendant of the criminal offense of knowingly and willfully taking oysters bedded or planted by a lessee, on the presumption juris et de jure that the finding of the oyster commission that the leased bedding grounds did not contain a natural oyster reef was correct, and that all oysters taken therefrom are presumed to have been bedded or planted by the lessee, notwithstanding the proof to the contrary, would be the same as to hold that it is unlawful for any person knowingly or willfully, and without the consent of the lessee, to take oysters *437 growing naturally and without cultivation on a natural oyster reef within the area of leased bedding grounds.
[6] The courts have no authority to disregard the words in the statute “bedded or planted by a lessee under this act,” and construe this criminal statute so as to make it unlawful for any person knowingly or willfully to take oysters growing naturally on a natural oyster reef. We have never departed from the doctrine announced by Mr. Justice Martin for the Superior Court of the territory of Orleans, more than a century ago, in Territory v. Nugent, 1 Mart. (O. S.) 174, quoting a celebrated British jurist:
“The freedom of our Constitution will not permit that in criminal eases the power should be lodged in any judge to construe the law otherwise than according to the letter.”
Section 18 of the Act No. 54 of 1914 corresponds precisely with section 18 of the Act No. 189 of 1910. Referring to the latter statute, in State v. Authement, 139 La. 1075, 72 South. 740, we said:
“The said statute does not make it an offense to take oysters from a natural oyster reef, but only such oysters as may have been bedded or planted by a lessee. Proof that the oysters taken by the defendant had been so bedded or planted was therefore necessary to be made. ^The failure so to have hold is reversible error.
[7, 8] It is argued ou behalf of the state that the defendant should be held guilty of a violation of the provision of section 5 of the Act No. 54 of 1914 that the lessee of oyster bedding grounds “shall enjoy the exclusive use of said water bottoms, and all oysters, shells and cultch grown or placed thereon shall be his, her or their exclusive property, so long as the rental is paid thereon.” Assuming that the expression “grown or placed thereon” means grown naturally and without cultivation, or placed thereon by the lessee, that section of the statute merely makes all oysters growing on leased bedding grounds the property of the lessee. Under that construction of the law one who willfully and knowingly and without the consent of the owner takes and carries away oysters growing naturally ou a natural oyster reef on leased bedding grounds might be held guilty of larceny of the property of such lessee. On that proposition we express no opinion, because the defendant in this case is not prosecuted for the crime of larceny. He could not be convicted of the crime of larceny in this case, because the bill of information does not state the value of the oysters, shells, and cultch alleged to have been taken and carried away, or that they had any value.
The provision that the lessee shall enjoy the exclusive use of the water bottoms leased to him as oyster bedding grounds, perhaps, precludes the idea that the defendant in this case had a right to go upon the leased bedding grounds and fish for the oysters growing naturally there. The lessee’s exclusive right to use the water bottoms leased as oyster bedding grounds,- perhaps, entitled the lessee to some equitable remedy to prevent an invasion of his exclusive right. But we cannot, on the pretext of supplying a remedy for the enforcement of the right of the lessee, construe section 18 of the statute so as to hold the defendant guilty of a criminal offense for-doing that which the statute does not denounce as a crime. If it is to be made unlawful for any person knowingly and willfully,, and without the consent or permission of the owner, to take oysters growing naturally on a natural oyster reef within the area of leased bedding grounds, it must be done by the Legislature. However sure we might be that the Legislature intended to make it unlawful' for any person knowingly or willfully to take oysters growing naturally on a natural oyster reef on leased bedding grounds, we have no authority to supply the omission or failure of the Legislature to express that intention. See State v. Trapp, 140 La. 425, 73 South. 255, and the decisions there cited.
*439 The theory on which the defendant was convicted was, in effect, an erroneous construction of the statute which he was accused of violating.
We adhere to the view expressed in State v. Authement, supra, that, in a prosecution .under section 18 of Act No. 54 of 1914 for taking oysters that were bedded or planted by a lessee, the state must prove that the oysters taken were bedded or planted by the lessee. If the facts and circumstances proven in this case were sufficient to convince the district j udge beyond a reasonable doubt that, in taking the oysters, shells and cultch from the natural reef on the leased bedding grounds, the defendant took some of the oysters, shells, or cultch bedded or planted by the lessee, the judge should have found the defendant guilty. The court was in error in holding that the proof that the oysters taken by the defendant had been bedded or planted by the A. St. Martin Company, Limited, could only be established by direct evidence identifying the oysters, shells, or cultch taken by the defendant as the same that had been actually bedded or planted by the A. St. Martin Company, Limited. The fact that, among the oysters, shells, and cultch taken by the defendant were oysters, shells, or cultch bedded or planted by the A. St. Martin Company, Limited, might have been proven by circumstantial evidence, as in any other case, if the circumstances warranted the conclusion beyond a reasonable doubt. But we do not understand the district judge’s “irresistible conclusion that it would be next to impossible” for the defendant not to have taken oysters, shells, or cultch bedded or planted by the lessee, when he fished oysters from the bedding grounds that had been cultivated by the lessee continuously for seven years, to mean that the circumstances proved beyond a reasonable doubt that the defendant took oysters, shells, and cultch that had been bedded or planted by the lessee. On the contrary, after having arrived at that “irresistible conclusion,” the district judge held tnat the state had failed to prove that any of the oysters, shells, or cultch taken by the defendant had been bedded or planted by the lessee; and he held that a verdict of “not guilty” would have to be rendered, except for and .upon the theory that the statute made it a misdemeanor to take any oysters, shells, or cultch from the leased bedding grounds.
Having concluded that the defendant could not be convicted legally on that theory or construction of the law, we would not be warranted in affirming the conviction upon our own idea of the sufficiency of the circumstantial evidence to establish the fact that the oysters, shells, or cultch taken by the defendant from the leased bedding grounds included some that had been bedded or planted by the lessee. It is the province of the district j.udge to determine the sufficiency of the evidence pertaining to the guilt or innocence of the defendant in a prosecution for a misdemeanor; and w© are constrained to remand this case in order that he may determine whether the evidence established beyond a reasonable doubt that the oysters, shells, or cultch taken by the defendant from the leased bedding grounds included any oysters, shells or cultch that had been bedded or planted by the lessee.
Although no complaint has been made of the fact that the defendant was condemned to pay a fine instead of being imprisoned, we deem it proper, in remanding this case, to direct the attention of the district judge to the fact that, although section 24 of Act No. 54 of 1914 provides that any person found guilty of violating any of the provisions of the act shall be punished by fine or imprisonment, section 23 provides merely that the penalty for a' violation of the provisions of section 18 of the act shall be imprisonment in the parish jail for a term not less than 90 days nor more than 2 years, at the dis *441 cretion oí the court. In other words, if the section of the statute declaring specially and particularly what shall be the penalty for violating the provisions of section 18 controls the general provisions of the section which declares what the penalty shall be for violating any of the provisions of the act, there is no warrant for imposing a fine upon the defendant in this case. Our opinion is that the penalty fixed for the violation of a particular section of the statute must control, in imposing the sentence for the violation of that particular section, the general provisions of another section declaring what the penalty shall be for violating any of the provisions of the act. See State v. Apfel, 124 La. 649, 50 South. 613, construing sections 6, 7, and 8 of Act No. 176 of 1908. Hence the case would have to be remanded for a correct sentence in any event. See State v. Anderson, 125 La. 779, 51 South. 846.
The conviction and sentence appealed from are annulled, and this case is remanded to the district court to be proceeded with according to the views expressed in the foregoing opinion.