SMITH *v.* LITTLE ROCK CIVIL SERVICE COMMISSION.

4-8819                                             218 S. W. 2d 366

Opinion delivered March 7, 1949.

Rehearing denied April 4, 1949.

*James I. Teague,* for appellant.

*Floyd Terral* and *T. J. Gentry,* for appellee.

GEORGE ROSE SMITH, J.  This is a representative suit filed by Smith and Glasscock, members of the Little Rock police force, on behalf of all Little Rock policemen whose employment was interrupted by service in the armed forces during World War II.  The complaint asserts that the Little Rock Civil Service Commission denied returning veterans the civil service status to which they were entitled by law.  This appeal is from a decree sustaining a demurrer to the complaint and dismissing the action.

I.  The appellants ask first that the appellees Baird, Eubanks and Gamble—the three members of the Commission—be permanently enjoined from acting as commissioners.  Appellants contend that each of these appellees is disqualified from retaining his post by reason of the fact that they each occupy another public office, contrary to governing statutes.  The theory is

that Act 28 of 1933 (Ark. Stats. [1947], §§ 19-1601—19-1618) authorized cities of the first class to create a civil service commission having jurisdiction over policemen and firemen only, while Act 322 of 1937 (*Ibid.*, §§ 19-1301—19-1317) empowered cities having more than 75,000 in population to create a second civil service commission for city employees other than firemen and policemen. Both statutes provide that the commissioners may not hold any other public office. Appellants allege that these three men have been named as members of both commissions, so that the occupancy of either position disqualifies them from holding the other. The appellees' answer is that the 1937 Act was intended to amend the earlier statute, by authorizing a single commission for all municipal employees in cities of the specified population.

The chancellor correctly sustained the demurrer to this part of the complaint. Even if appellants' construction of the statute were approved, the supposed disqualification would not affect the status of these appellees as *de facto* commissioners. And chancery is not the proper forum in which to decide whether they are also *de jure* officers. ''Equity has no inherent power to oust an incumbent whose title to the office has been forfeited by misconduct or other causes.'' *Gladish* v. *Lovewell*, 95 Ark. 618, 130 S. W. 579. The remedy in such cases is by appropriate action in the circuit court. *State* v. *Sams*, 81 Ark. 39, 98 S. W. 955. We need not speculate upon the possibility of a taxpayer's action—which this is not—to restrain the payment of illegal salaries; for the 1933 Act directs that the commissioners serve without compensation.

II. The principal controversy concerns the treatment accorded by the Commission to returning veterans. At this point we must outline the civil service procedure in order to state the contentions of the litigants. The statute contemplates that civil service promotions will be made pursuant to eligibility lists based on periodic competitive examinations. After each examination a new list is prepared, the contestants being ranked according

to their grades. Whenever a vacancy in a civil service position occurs, the employee who stands first on the eligibility list for that position is entitled to the appointment. Thus a favorable position on the list is a condition to promotion.

Smith asserts that when he entered the military service on October 3, 1942, he ranked first on the roster for promotion from patrolman to detective sergeant. A vacancy then existed in the grade of detective sergeant, but some one else was appointed after Smith's departure. When Smith returned to the police department on January 23, 1946, the Commission refused to give him a place on the current eligibility list. Instead, he was compelled to wait until the next examination, which he took and so established his position on the succeeding list.

We find no merit in the contention that Smith should have been promoted to the position that was vacant when he entered the service—even though the Commission's regulations make appointments retroactive to the inception of the vacancy. We must assume that the commissioners had reasonable cause for not making the appointment before Smith's entry into the service. Thereafter he was not present to perform the duties of the position, and, as we shall see, his status was suspended until his return to civilian duty. Consequently the commissioners properly promoted the patrolman who had progressed to the head of the list by reason of Smith's absence.

Nor can we agree with Smith's contention that upon his return he should have been recognized as an applicant for the higher grade of lieutenant. He alleges that he then took this examination, while he was a patrolman, but the Commission disregarded his participation. A sufficient answer is that Smith had not served for a year in the intermediate grade of sergeant, as the statute requires. Ark. Stats. (1947), § 19-1603.

We think, however, that the Commission was wrong in refusing to restore Smith to the eligibility list when he came back in 1946. Federal, State and municipal legislation must be considered in the determination of his

rights as a returning service man. First, the Selective Service Act (USCA, Title 50 App., § 308) had stated as the sense of Congress that State and municipal employees should be restored to their former positions or to others of "like seniority, status, and pay." By Act 247 of 1943, § 13 (Ark. Stats. [1947], § 12-2313), the Arkansas legislature declared that this provision should be applicable to public employees in this State. (This Arkansas statute was not called to our attention in *McLaughlin, Trustee,* v. *Retherford,* 207 Ark. 1094, 184 S. W. 2d 461, where we stated that the federal act did not apply to public employees in this State.)

Second, this same 1943 statute undertook to preserve the civil service status of public officers who entered the armed forces. One provision was that such officers should retain "all seniority rights, efficiency rating, promotional status and retirement privileges." Ark. Stats. (1947), § 12-2310. A later section of the act extended its benefits to public employees, as distinguished from public officers, who were granted leaves of absence under the statute. *Ibid.,* § 12-2312. A 1947 statute requires that time spent in the armed forces be counted for seniority purposes. *Ibid.,* § 12-2324.

Third, by Ordinance No. 6405, adopted in March, 1942, the city council of Little Rock declared that municipal employees returning from military service should retain the "civil service status" which they formerly held. The appellees question the validity of this ordinance, upon the theory that the exclusive power to grant leaves of absence to municipal employees is vested in the Civil Service Commission. But Act 247 of 1943, *supra,* authorized leaves of absence for public employees entering the armed forces and was expressly made retroactive. To this extent the Act amended existing civil service legislation. Whether such leaves should be granted to Little Rock's employees was a question of municipal policy. We think that the city council was the proper body to determine this policy and that it did so by the passage of this ordinance and the resolution to be mentioned later.

Thus the Selective Service Act, as ratified by our legislature, protected the "status" of public employees. Act 247 went farther and preserved their "promotional status." And the city council declared that they should retain their former "civil service status." In the face of such a uniform policy we think the Commission erred in failing to restore Smith to his numerical position on the eligibility list when he returned to city employment. His promotional status could be preserved only by reinstating him in his former position in the structure of civil service employment. Since he stood at the head of the roster when he entered the service, he should have been given that same position when his employment was resumed. Of course the employees who had not been in military service would have to yield to make room for his name on the list then in force.

Even so, these particular appellants have not demonstrated their right to relief. Had Smith been restored to the top of the list, he would have been entitled to promotion to the first vacancy in the grade of detective sergeant occurring after his return and before the next list was prepared. But the complaint does not show that any promotion to that grade was made until June 1, 1947, and on that date Smith was among those promoted. Hence he has not stated facts sufficient to constitute a cause of action in this respect. The same thing is true as to Glasscock, since he did not allege that he was on any promotion list when he entered the service. We conclude that the chancellor properly sustained the demurrer to the allegations in this respect.

III. Finally, appellants assert that they should be granted an opportunity to compete in examinations against employees who were promoted during their absence. They base this contention on Resolution No. 1691, adopted by the council on September 10, 1945. The preamble to this resolution recognized the fact that employees in the military service were unable to take examinations for promotion. The body of the resolution declared that after its date all promotions should be temporary until six months after the termination of the emergency, as fixed by the President. Although the

President declared that hostilities had ceased on December 31, 1946, we are not aware of any declaration by him that the emergency has ended.

For the reasons already stated, we think the council was authorized to declare as a matter of general policy that promotions should be temporary for the time stated in the resolution. But here the difficulty is that the council has not yet provided machinery by which these positions may be filled on a permanent basis. While the way has been kept open for veterans to be given the opportunity to compete for these positions, the courts are obviously unable to require that examinations be held until the council establishes appropriate procedure. Hence the chancellor properly sustained the demurrer as to this count.

In summary, we hold that returning service men were entitled to be restored to their numerical positions on the eligibility lists. They will also have the right to compete for permanent grades in the city's employment, upon such terms as the council in its discretion may designate. Although these particular appellants have not demonstrated their right to promotion, this representative suit is binding only on others who are similarly situated. If other employees of the city can show that by restoration to the eligibility lists they would have received promotions which were actually withheld, then the incumbents must give way so that the city may keep faith with its citizens who entered the military service.

Affirmed.