97 So.2d 657 (1957)
Dr. Milton FEINBLUM
v.
LOUISIANA STATE BOARD OF OPTOMETRY EXAMINERS.
No. 4449.
Court of Appeal of Louisiana, First Circuit.
October 4, 1957.
Racivitch, Johnson, Wegmann & Mouledoux, New Orleans, Thompson, Thompson & Sparks, Monroe, Kantrow, Spaht, West & Kleinpeter, Baton Rouge, for appellant.
*658 Henry Klepak, Dallas, Tex., Dodd, Hirsch & Barker, Baton Rouge, for appellee.
ELLIS, Judge.
This is an appeal by defendant, Louisiana State Board of Optometry Examiners, from a judgment enjoining the said board, "its members, officers, agents, servants and employees from holding any hearing of any charges against petitioners for the purpose of considering the possible revocation or suspension of petitioners' certificates to practice optometry, or from taking any other action which might interfere in any manner with or prevent the petitioners herein from practicing optometry in the State of Louisiana," on the sole ground that the board is illegally constituted in that the Governor, in appointing the members of said board, did so from a list of names furnished by "Louisiana State Association of Optometry, Inc.," and not from a "list of names presented to him by the Louisiana State Association of Optometrists," as required by LSA-R.S. 37:1042. The trial court found as a fact that there is not in existence a Louisiana State Association of Optometrists.
On the date of September 25, 1952, each of the plaintiffs were sent by the Secretary of the Louisiana State Board of Optometry Examiners, acting under authority from the board, the following notice:
"I have been instructed by the Louisiana State Board of Optometry Examiners to advise you that certain charges have been filed against you with said board. These charges are:
"(1) That you have, are now having, and have had professional connection with White Brothers Jewelry Store at 732 Canal Street in the City of New Orleans, Louisiana. That since you are licensed as an optometrist by the Louisiana State Board of Optometry Examiners and since White Brothers Jewelry Store is not licensed and can not be licensed to engage in the practice of optometry in Louisiana, you are permitting your name and license to be used by White Jewelry Store to permit it to illegally engage in the practice of optometry in violation of Section 1061, Title 37, Chapter 12 of the revised Statutes of Louisiana for the year 1950.
"(2) That you have loaned yourself and are lending yourself and your name to White Brothers Jewelry Store to permit it to engage unlawfully and illegally in the practice of optometry in the State of Louisiana, all in violation of Section 1061, Title 37, Chapter 12 of the Revised Statutes of Louisiana for the year 1950.
"The Louisiana State Board of Optometry Examiners has fixed the 13th day of October, 1952 at the hour of 2:00 P.M. at the Roosevelt Hotel in the City of New Orleans, the room number to be found on the bulletin board in the lobby of said hotel, to hear evidence on the charges above referred to. This hearing will be open to the public and will be opened to the public as provided by Section 1062, Title 37, Chapter 12 of the Revised Statutes of Louisiana for the year 1950.
"You are hereby notified and summoned to be present at said hearing. You will be afforded every opportunity to produce testimony in your favor and in refutation of the charges above referred to and you will be fully authorized, through yourself or any attorney of your selection to cross-examine any witness appearing against you.
"You are entitled and the board will accord you that right to be represented by an attorney of your own selection.
"At the conclusion of the hearing the board will, either at that time or such other time as it shall fix, determine whether the charges preferred against you have been proven, and if so, *659 whether your license, which authorizes you to practice optometry in Louisiana, should be revoked entirely or should be suspended, or if any action at all should be taken against you, all as provided for in Section 1061, Title 37, Chapter 12 of the Revised Statutes of Louisiana for the year 1950.
"In Testimony whereof I witness my signature on this the 25th day of September, 1952."
(The letters addressed to the other plaintiffs are similar to the letter herein quoted.)
On the day fixed for the hearing, or on a day prior thereto, which was October 13, 1952, two of the plaintiffs obtained restraining orders issued by Judge Lindsay of the 19th Judicial District Court and two of them obtained temporary restraining orders issued by Judge Hamlin, one of the judges of the Civil District Court for the Parish of Orleans, restraining and prohibiting the Board from conducting the hearing as set forth in the above notice.
In obedience to the injunctive process, the hearings fixed for October 13, 1952, were not held and there has been no hearing by the Board since that day.
To the plaintiffs' petitions the defendant board filed a plea to the jurisdiction of the court and plea of pre-maturity, both of which were based upon the proposition that a litigant was not entitled to judicial relief for a supposed or threatened injury until the administrative remedies have been exhausted. The defendant board also filed an exception of no cause or right of action based upon the proposition that the members composing the State Board were occupying a de jure office and were either de jure or de facto officers, and, therefore, the Nineteenth Judicial District Court was without jurisdiction in a collateral manner in this type of proceeding to inquire into the legality of the appointment of said members, or their titles to said offices and in an indirect manner attempt to remove the members from their respective offices and to deprive them of the right to perform the duties required of them.
The defendant board also filed a plea of estoppel on the ground that these plaintiffs had obtained a license and renewal thereof from the defendant board and are, therefore, estopped from attacking the board on the ground that it was illegally constituted.
On June 5, 1953 the Lower Court overruled the pleas filed by the board and ordered the production of evidence restricted solely to the factual issues of whether the original unincorporated association named in the Optometry Statute was still in existence at the time the present Board members were appointed. That portion of the Lower Court's ruling stated:
"* * * If, as a fact, the Louisiana State Association of Optometrists (as named in LSA-R.S. 37:1042) no longer exists, then there is no provision made for the appointment of a legal board by the governor * * * I see no authority under the act for the governor to appoint the members of the Louisiana State Association (Board) of Optometry Examiners from a list submitted to him by Louisiana State Association of Optometry, Incorporated, a private corporation, and if, as a fact, there no longer exists the Louisiana State Association of Optometrists, then, in my opinion, the Board is illegally constituted and plaintiff would be entitled to an injunction restraining the defendant from holding a hearing in regard to his qualifications to practice optometry.
"Therefore, for these reasons, judgment is rendered and will be signed overruling the various exceptions and pleas hereinabove referred to and ordering the production of evidence restricted to the question of whether or not there is in existence the Louisiana State Association of Optometrists."
The defendant board applied to the Supreme Court for remedial writs to review *660 this order which was denied on November 6, 1953, and thereafter the Lower Court heard evidence in accordance with its ruling, supra, and concluded from the evidence that the Louisiana State Association of Optometrists ceased in the year 1937 when the individual members of the association formed a non-trading corporation known as Louisiana State Association of Optometry, Inc., and therefore reasons that under LSA-R.S. 37:1042 the Governor is required to appoint the members of the Board of the Louisiana State Board of Optometry Examiners from a list of five men to be presented to him by "Louisiana State Association of Optometrists" and the Governor having appointed the Board from the list submitted by the Louisiana State Association of Optometry, Inc., for the reason that defendant board was illegally constituted and the plaintiffs were entitled to an injunction restraining the defendant board from holding the hearing in regard to the qualifications of plaintiffs to practice optometry, and judgment was rendered in accordance therewith and signed on the 30th day of November, 1954.
Separate suits were filed by Dr. Milton Feinblum, Dr. Andrew A. Macaluso, Frederick Elliott, O. D., and Joseph LoCicero, Jr., against the defendant board, however, they were consolidated for the purpose of trial, and will be so considered on this appeal. Appeals were taken to the Supreme Court but were transferred to this court.
The first question to be decided by this court is whether the defendant board is illegally constituted as found by the Lower Court and, therefore, deprived of the right to act in accordance with LSA-R.S. 37:1042 and particularly LSA-R.S. 37:1062.
LSA-R.S. 37:1042 states:
"Each member of the board (Louisiana State Board of Optometry Examiners) shall be appointed by the governor from a list of five names presented to them by the Louisiana State Association of Optometrists."
There is no question but that a list of names was submitted to the governor by the Louisiana State Association of Optometry, Inc., after 1937 and the defendant board was appointed from a list submitted by the incorporated association of optometrists. The answer of the defendant board to plaintiff's contention and the holding of the trial court that they are illegally constituted and incapacitated to act by virtue of the fact that they were appointed by the governor from a list presented by the Louisiana State Association of Optometry, Inc., rather than by the Louisiana State Association of Optometrists is that they were appointed by the Governor to a de jure office and they are, therefore, de facto officers. It is also contended that they are de jure officers in that the Louisiana State Association of Optometry, Inc., is the Louisiana State Association of Optometrists within the intendment of the Legislature. However, we will consider the defendant board's contention that they are de facto officers and their right to act cannot be collaterally attacked in this proceeding but can only be attacked in a direct proceeding.
We find in 67 C.J.S. Officers § 135 p. 438, the following with regard to de facto officers:
"An officer de facto is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law. Generally a person will be held to be a de facto officer when, and only when, he is in possession, and is exercising the duties, of an office, as discussed infra § 137, his incumbency is illegal in some respect, he has at least a fair color of right or title to the office, as discussed infra § 138, or has acted as an officer for such a length of time, and under such circumstances of reputation or acquiescence by the public and public authorities, as to afford a presumption of appointment or election, and induce people, without inquiry, and relying on the supposition that he *661 is the officer he assumes to be, to submit to or invoke his action, as discussed infra § 142 and, in some, although not all, jurisdictions, only when the office has a de jure existence, as discussed infra § 136. All of the essential elements of the status must be present for one to be considered a de facto officer.
"Office holding de facto is a fiction of law designed to serve a useful purpose, but the fiction does not abolish the law. While a de facto officer has been held not to be an officer, although his acts may have legal effect, he has also been held to be a legal officer until ousted, and to be submitted to as such until displaced by a regular direct proceeding for that purpose. The party asserting that one, not an officer de jure, is an officer de facto has the burden of going forward with evidence thereof, if not, indeed, the true burden of proof."
See also:
"A person in possession of and actually performing the duties of an administrative office under color of right or title is an officer de facto, and his acts as such are valid as far as the public or third persons are concerned," 73 C.J.S. Public Administrative Bodies and Procedure § 25, p. 318.
It is also well settled that the right of a de facto officer to exercise the functions of an office cannot be attacked collaterally, but that a direct proceeding to try title to the office is necessary. State v. Sadler & Campbell, 51 La.Ann. 1397, 26 So. 390; State v. Schuermann, 146 La. 110, 116, 83 So. 426; State v. Moreau, 153 La. 671, 96 So. 527; State ex rel. Wilkinson v. Hingle, 124 La. 655, 50 So. 616; State v. Williams, 35 La.Ann. 742; State ex rel. Williams v. Portsdorf, 33 La.Ann. 1411.
See also: State ex rel. Saint v. Toups, La.App., 95 So.2d 55.
In Williams v. Police Jury, 160 La. 325, 107 So. 126, taxpayers had sought to enjoin a bond issue on the ground, inter alia, that two of the police jurors, whose vote was necessary to the majority vote apportioning the bonds did not possess the legal qualifications and were not legally qualified to serve as police jurors. The Supreme Court, accepting the allegations as true for purposes of the holding, stated that nevertheless "it is clear they are de facto officers, and that their acts are valid in so far as they concern the public or the rights of third persons" and that "it is also well settled that the right of a de facto officer to exercise the functions of an office cannot be attacked collaterally, but that a direct proceeding to try title to the office is necessary," 107 So. 128, citing many authorities.
In Smith v. Little Rock Civil Service Commission, 214 Ark. 765, 218 S.W.2d 366, an attack was made on a ruling of the defendant civil service commission, inter alia, on the ground that the members thereof were disqualified from being appointed to or serving thereon. According to the plaintiffs' petition none of the defendant civil service commission were statutorily entitled to serve or act as commissioners (allegedly because they were dual office holders as members of a companion civil service commission, in violation of a statutory prohibition against civil service commissioners holding any other office.) The Supreme Court of Arkansas nevertheless sustained a demurrer to this ground of attack, holding that nevertheless the commissioners as de facto officers were competent to act and their status could not be collaterally attacked in proceedings involving the validity of their official act.
Garnier v. Louisiana Milk Commission, 200 La. 594, 8 So.2d 611, is readily distinguished, as holding invalid the vote of a complete stranger sitting with the commission without even the color of title, claiming an ex officio position which was not created by law, unlike the board members *662 in the present and Smith cases, sitting by color of legal appointments on a de jure board.
Applying the principles enunciated in the above cited cases to the facts in the present case, the board members are occupying a de jure office created by constitutional law, viz., LSA-R.S. 37:1041 et seq., under an appointment by the Governor in accordance with the power granted to him under LSA-R.S. 37:1042. Wilson v. Lee, 196 La. 271, 199 So. 117. In State ex rel. Floyd v. Hodges, 165 La. 552, 556, 115 So. 747, 749, the Supreme Court said:
"If one in possession of office, under color of title, could not be required, during his incumbency, to discharge the duties of the office, the public might suffer until his title to it could be ascertained in a proper proceeding. The acts of an officer de facto are valid as to third persons and the public. Williams v. Police Jury, 160 La. 325, 107 So. 126; State v. Moreau, 153 La. 671, 96 So. 527. Our conclusion is, as stated, that the exception is not well founded."
Also see State v. Moreau, 153 La. 671, 96 So. 527.
Therefore, under the above law we are forced to hold that our brother below was in error in holding that the defendant board had no right to act in these cases as it was illegally constituted. To raise that question it would be necessary for the plaintiffs to file a direct proceeding questioning the title or right of the members of the defendant to occupy the office to which they were appointed by the Governor.
We are therefore of the opinion, that under any interpretation the present members of the Louisiana State Board of Optometry Examiners would be de facto officers.
Counsel for the defendant board filed a plea of prematurity as well as one of jurisdiction both of which were based upon the legal proposition that a litigant is not entitled to judicial relief for a supposed or threatened injury until the administrative remedies have been exhausted. The administrative remedies of the plaintiff in this case have not been exhausted. Counsel for the defendant board cites O'Meara v. Union Oil Co. of California, 212 La. 745, 33 So.2d 506; Porter v. O'Neal, 205 La. 445, 17 So.2d 622; State v. Guidry, 142 La. 422, 76 So. 843; Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638.
Counsel for plaintiffs do not deny the general rule but contend that a litigant is not required to exhaust administrative remedies in three instances:
1. When pursuing his administrative remedies will cause irreparable injury;
2. When administrative remedies are inadequate;
3. When the agency's action is unconstitutional, beyond its jurisdiction or clearly illegal.
In his brief he argues as a basis for the first exception that plaintiffs would have suffered irreparable injury if they had been forced to a hearing, the result of which was a foregone conclusion. We cannot affirm or accept the fact that a hearing would have been a foregone conclusion. It is further stated that "appellees' only relief from an arbitrary or improper Board action would have been a devolutive appeal. LSA-R.S. 37:1041 et seq.; LSA-R.S. 13:4431 et seq." The law specifically provides in LSA-R.S. 37:1062 for a hearing and also stated that "any person aggrieved by the decision of the board shall have the right to appeal to the courts of the state." In other words, should these plaintiffs receive adverse decisions from the State Board they are specifically given an appeal to the Courts of the State, and pending a final determination by the courts their status would not be changed. LSA-R.S. 13:4431 is not controlling in this case and would not change or affect plaintiffs' right to appeal to the courts. Further, we *663 find under LSA-R.S. 37:1064 that the only way the State Board can prevent a person from practicing optometry, even though in violation of the law, is by a motion in any court of competent jurisdiction for a rule and injunction should the person be found by the court to be practicing in violation of the law. Plaintiffs would not suffer an irreparable injury by pursuing the administrative remedies provided by law, and therefore the administrative remedies are not inadequate.
In urging further that plaintiff is entitled to judicial relief despite the availability of further administrative remedies, able counsel further urges that any action to be taken by the defendant Board is clearly illegal and unconstitutional as the unconstitutional delegation of legislative authority to a private corporation or body. Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160, Schechter Poultry Corp. v. U. S., 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, Dr. G. H. Tichenor Antiseptic Co. v. Schwegmann Brothers Giant Super Markets, 231 La. 51, 90 So.2d 343, City of Alexandria v. Alexandria Fire Fighters, 220 La. 754, 57 So.2d 673. The basis for this argument is that the regulation of optometry is allegedly intrusted to the private corporation, the Louisiana State Association of Optometry, Inc. It is sufficient to remark that the regulation of optometry is not entrusted by the legislature to this corporation, but to the public board made defendant herein.
Plaintiffs-appellees, as shown by their brief, further base this contention upon the proposition that the "charges of the Board were based upon the a priori assumption that practice by an optometrist in a `commercial' location or as a corporate employee is illegal. The very fact that these charges were made indicated that the Board proposed to act illegally." The charge made against the plaintiffs, supra, is based specifically upon LSA-R.S. 37:1061(6) and (14). In other words, as we understand counsel's argument they say that the charges of the Board are in reality based upon an assumption that an optometrist cannot follow his practice in a commercial location or as a corporate employee. The charge against plaintiffs does not contain a statement of illegal practice caused by carrying it on in a commercial location or as a corporate employee. If on the hearing it is revealed that plaintiffs were only guilty of a breach of the code of ethics or some rule or regulation of the optometry association and not guilty of the specific violation of the law as contained in LSA-R.S. 37:1061(6) and (14), no court would allow an adverse decision of the board to stand. If they are only guilty of violating the so-called code of ethics or some rule or regulation of the Association, were they members, possibly the association could expel them but the Louisiana State Board of Optometry Examiners could not legally revoke their license. If the charges levelled against these plaintiffs were clearly outside or beyond those contained in LSA-R.S. 37:1061, on the face of the formal charges, then the injunctive relief would be in order. This is not true in the present case and since the charges were specifically based upon the alleged violation of LSA-R.S. 37:1061(6) and (14), the hearing cannot be enjoined. The case of Myers v. Bethlehem Shipbuilding Corporation, supra, is particularly relevant on this point: "Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant of the necessity of a trial to establish the facts." [303 U.S. 41, 58 S.Ct. 464.] While counsel for the board also filed a plea of estoppel we see no necessity in considering it in view of the above rulings.
For the above and foregoing reasons, the judgment of the District Court herein enjoining defendant Board from hearing charges against plaintiff or holding hearings to consider the possible revocation or suspension of plaintiff's license, is reversed; and judgment is rendered in favor of defendant Board dismissing plaintiff's *664 suit and sustaining defendant's plea of prematurity and exception of no cause of action.
Reversed and rendered; suit dismissed.